These are appeals from orders pursuant to Alabama Rules of Civil Procedure (ARCP) 54 (b) entering final judgments for Thomas Duckett Construction Co., Inc. on two claims in an action on contracts for three construction projects. We affirm.
On August 4, 1975, Thomas Duckett Construction Co., Inc. (Duckett, Inc.) filed a five count complaint against George Rush d/b/a Rush Engineers and Rush Engineers, Inc., a non-existent corporation, in Marshall County Circuit Court. The complaint contained claims based on contracts for landscaping and grading work on low rent housing *Page 763 
projects in Decatur and Tuskegee and for sewer and grading work on the Little Mountain State Park project in Guntersville. Four of the counts in the complaint contained allegations of breaches of four separate contracts involving the Decatur, Tuskegee and Guntersville projects. The fifth count claimed damages for willful and intentional interference with Duckett's performance of the Guntersville contracts. The Guntersville contracts were executed by Rush and Thomas Duckett d/b/a Duckett Grading Co., while the Decatur and Tuskegee contracts were executed by Rush and Duckett, Inc.
On August 25, Rush filed a motion to dismiss for improper venue on the ground that he did not do business by agent in Marshall County. That motion was denied and Rush then filed an answer admitting the existence of the contracts and denying any breaches and counterclaimed for damages he incurred by Duckett, Inc.'s failure to complete work under the respective contracts. On March 10, 1977, nineteen months after his original venue motion, Rush moved for a rehearing on that motion alleging that he was a resident of Calhoun County, Alabama and that no work and labor had been performed in Marshall County. He requested that the case be transferred to Calhoun County under ARCP 82 (d) as it was a personal action in contract against a resident individual. Subsequent to the filing of Rush's motion for rehearing, but prior to the hearing on that motion, Duckett, Inc. had amended the complaint to include a count for work and labor done between May 20, 1975 and August, 1975 on the projects. The venue motion was overruled with the trial judge stating that the motion was filed too late and that the case involved work and labor. Rush later requested that the jury be charged on the venue issue and the charge was refused.
The bifurcated trials began on March 23, 1977, with the portions of the complaint relating to the Decatur project contracts being tried to the jury first. This trial proceeded over a number of objections to evidence and other matters, resulting in a jury verdict for Duckett, Inc. for twenty-six thousand four hundred four and 89/100 dollars ($26,404.89). Subsequent to this portion of the trial both Rush and Duckett, Inc. filed motions for summary judgment and supporting affidavits. The trial judge denied both motions. Duckett also filed a motion for final judgment asking that the judgment awarded by the jury on the Decatur project contracts be made final pursuant to ARCP 54 (b). This matter was taken under advisement but the trial judge did not enter an order.
On February 22, 1978, Rush filed a motion under ARCP 42 (b) requesting a separate trial on the issue of who was a proper party to litigate the counts in the complaint relating to the Guntersville project. That motion was overruled and the aspects of the case pertaining to the Guntersville project contracts were tried to the jury, beginning March 29, 1978. At trial Rush filed a motion to exclude any extrinsic evidence on the point of the identity of the parties to the Guntersville contracts and in the alternative moved for summary judgment or a directed verdict on those counts. The jury returned a verdict in favor of Duckett, Inc. for ninety-nine thousand four hundred ninety and 88/100 dollars ($99,490.88).
Duckett, Inc. then filed a motion for final judgment asking that the judgments returned by the jury on both the Decatur and Guntersville projects be made final. After hearing arguments for and in opposition to this motion, the trial judge issued an order making the Decatur project judgment final and stating that at the end of a sixty day period he would rule on the motion relative to the Guntersville project judgment. On August 29, 1978, the trial judge entered an order making the Guntersville project final. The Tuskegee project counts of the complaint have not been tried.
On appeal, Rush initially asserts that the trial court erred in failing to transfer the case from Marshall County to Calhoun County Circuit Court since it was a civil action against a resident of this state residing in Calhoun County based on contract. He also contends that Duckett, Inc. should *Page 764 
not have been allowed to maintain the suit on the Guntersville contracts, which were between Rush Engineers and Thomas Duckett d/b/a Duckett Grading Co. Finally, he argues that certain evidentiary rulings in the trial of the Decatur and Guntersville counts require reversal.
ARCP 82 (b)(1)(A) provides that actions against an individual who has a permanent residence in this state
 "Must be brought in the county where the defendant or any material defendant resides at the commencement of the action, except that if the action is a personal action other than an action on a contract, it may be brought either in the county where the act or omission complained of occurred, or in the county of the permanent residence of the defendant or one of them."
That rule also states that venue of actions as set out in the statutes will not be affected except where the statute for venue for actions against individuals at law, Code of 1975, §6-3-2 (a), conflicts with the statute for venue of actions against individuals in equity, Code of 1975, § 6-3-2 (b).
Counts I, II, III, and IV clearly sound in contract. Count V of the original complaint, which alleges willful and intentional interference with Duckett's performance of the Guntersville contracts, has been argued by the parties to improperly request punitive damages for breach of contract or on the other hand, to allege an actionable tort of willful and intentional interference with performance of a contract. Whether Duckett, Inc. intended this count to sound in tort or contract is not clear. However, Duckett, Inc. amended its complaint to add a count for work and labor prior to the trial judge's ruling on Rush's motion for rehearing on the venue issue. ARCP 15 (c) provides that amendments based on claims arising out of the conduct, transaction, or occurrence set out in the original complaint relate back to the date of the original complaint. After the trial judge's ruling, an additional and separate amendment for work and labor done on the Guntersville project was filed.
Actions for work and labor may properly be commenced in the county where the work was done. Code of 1975, § 6-3-3; Ex ParteCity of Huntsville Hospital Board, 366 So.2d 684 (Ala. 1978);Lucas v. Samford, 223 Ala. 235, 135 So. 576 (1931). Here there was work and labor performed in Marshall County on the Guntersville project contracts even though on the contract-based counts venue was properly in Calhoun County, the county where Rush resided. ARCP 82 (c) states that where several claims have been joined, venue is proper in any county where any one of the claims could have been brought. The trial judge did not err in denying Rush's motion for a rehearing on the venue issue because the work and labor count, Count VI, could properly be heard in Marshall County and thus the entire complaint could be heard in that county.
One who is not a party to a contract cannot sue for or otherwise take advantage of any breach of the contract. Twinev. Liberty National Life Insurance Co., 294 Ala. 43,311 So.2d 299 (1975). Moody v. Moody, 339 So.2d 1030 (Ala.Civ.App.), cert. den. 339 So.2d 1035 (Ala. 1976). Where fraud or mistake is not alleged, unless the contract is ambiguous, parol evidence may not be allowed to show that the party signing the contract actually signed on behalf of someone else. Hunter v.Austin Co., 336 So.2d 208 (Ala. 1976). That case quotedRichmond Locomotive Machine Works v. Moragne, 119 Ala. 80,24 So. 834 (1898):
 "If an agent, in the execution of a promissory note, disclose his principal, make it appear on the face of the paper that it is the contract of the principal, and sign it as agent, of course the principal is bound, the undertaking being within the agency, and the agent is not. On the other hand, if a principal is not disclosed on the face of the paper, and the party signing describes himself as agent, trustee, or the like, without more, it is the obligation alone of the party whose name is set to the paper, the superadded word or words being mere descriptio personae *Page 765 
to be disregarded as surplusage, and evidence cannot be received to show that he was, in fact, the agent or trustee or the like of an undisclosed principal, cestui que trust, or the like, and that the obligation was that of such other person. And again, if the paper discloses the names of two parties, either of whom may be the obligor, and it is doubtful from the whole instrument which of the two is intended to be bound, and the signer describes himself as agent, or as acting in other representative capacity, parol evidence is admissible to show that it is the obligation of the party named in but not signing the paper."
This Court has said that when a contract is ambiguous, the court may look to the construction which the parties have place on it to ascertain its true meaning. Birmingham Water Works Co.v. Windham, 190 Ala. 634, 67 So. 424 (1914).
Duckett, Inc. contended at trial and contends on appeal that the Guntersville project contracts were ambiguous as to the identity of the parties and thus various factual issues were open to construction using extrinsic or parol evidence. Their argument was based on the fact that one contract which stated it was between Rush Engineers and Thomas Duckett d/b/a Duckett Grading Co. was executed by Danny Duckett and another contract with the same parties named was signed Thomas Duckett, President. They presented exhibits and the testimony of George Rush indicating that Rush made seven progress payments on the Guntersville project contracts totaling one hundred fifty-four thousand six hundred sixteen and 40/100 dollars ($154,616.40) to Thomas Duckett Construction Co., Inc., not to Thomas Duckett individually or to Duckett Grading Co. Thomas Duckett testified that all equipment used belonged to Duckett, Inc. and all expenditures on the project were paid by the corporation. He further testified he had never done business as Duckett Grading Co. and had not transacted business in an individual capacity since 1970. The trial judge charged the jury on how they should find if they believed the contract to be ambiguous.
The trial judge, however, also charged the jury on implied contract if the jury did not find the Guntersville project contracts ambiguous and thus no express contract existing between Rush and Duckett, Inc., the parties to the suit, on the Guntersville project. Evidence was presented by Duckett, Inc. on the parties' conduct which could have tended to show manifested mutual assent to the terms of an agreement implied from the factual circumstances, the requisites for an implied contract as set forth in Sims v. Etowah County Board ofEducation, 337 So.2d 1310 (Ala. 1976); Adams v. Republic SteelCorp., 254 Ala. 620, 49 So.2d 214 (1950).
Furthermore, not only were the counts on the Guntersville project contracts tried in the portion of the suit relating to the Guntersville project but Count VI, the general work and labor count, and Count I (A), the work and labor count specifically concerning the Guntersville project, were also heard. Evidence was presented which would show that the work and labor was done by Duckett, Inc., a party to the suit, rather than Thomas Duckett, d/b/a Duckett Grading Co.
In returning a verdict for Duckett, Inc., the jury did not indicate whether it did so because the express contract was ambiguous and Duckett, Inc., a proper party to the suit; because it found an implied contract; or because of the work and labor performed. Because of the presence of the work and labor counts in the Guntersville portion of the trial and the possibility of an implied contract, we cannot say the trial court erred in allowing Duckett, Inc. to maintain suit on the Guntersville project contracts.
Numerous evidentiary errors in both the Decatur and Guntersville portions of the trial have also been asserted by Rush. He alleges that a portion of a deposition was improperly introduced into evidence without showing that the requirement of ARCP 32 (a)(3)(B) had been met; that certain estimates for partial payment and a Low Rent Public Housing Construction Report prepared *Page 766 
by the Clerk of the Works were hearsay and inadmissible; that a letter and reply thereto allowed into evidence were self-serving, irrelevant, hearsay and prejudicial; that unlimited cross-examination of Thomas Duckett should have been allowed; that unfounded opinion testimony was allowed; and that a new amendment was permitted on the date set for trial. He further asserts that Duckett, Inc. did not have a matured and actionable claim at the time the complaint was filed; that the trial court should not have entered an order making the two judgments final under ARCP 54 (b); and that a challenge for cause should have been granted of a juror, an employee in an insurance agency who normally wrote insurance for Duckett, Inc. On an examination of the record we can find no failure by the trial court to comply with the applicable rules of evidence, jury selection, and civil procedure.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON and EMBRY, JJ., concur.